UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

THE CENTER FOR DISCOVERY, INC.,

               Plaintiff

               -against-

D.P., his parents V.P. and C.P., and the NEW YORK
CITY DEPARTMENT OF EDUCATION,

               Defendants

--------------------------------------------------------------------X

REPLY AFFIDAVIT

DOCKET NO.
16 CV 0936 (MKB)(RER)

STATE OF NEW YORK
COUNTY OF NASSAU:

      ROBERT L. SCHONFELD, being duly sworn, deposes and says under penalty of perjury
as follows:

      1. I am of counsel to the law firm of MORITT HOCK & HAMROFF LLP, attorneys for
the Plaintiff The Center for Discovery, Inc. ("CFD").

      2. I make this affidavit in further support of our motion to dismiss our action pursuant to
FRCP 41(a)(2) and dismiss the Counterclaims of D.P, V.P., and C.P ("the Remaining
Defendants'), and in opposition to the papers of the Remaining Defendants seeking to place
unreasonable and unnecessary conditions on our motion to dismiss and to continue the
counterclaims in this Court.

      3. This affidavit is made on the assumption that all of the allegations in both the
Amended Complaint and the Answer and Counterclaims of the Remaining Defendants are true.

4. This affidavit will put into perspective the decisions made by CFD in litigating this action.

5. As stated in the facts alleged in the Amended Complaint, D.P. is a resident-student at a school operated by CFD.

6. As also stated in the facts alleged in the Amended Complaint, CFD believed from his behaviors and actions that D.P. was a truly dangerous child.

7. As is apparent from the facts alleged in the Answer and Counterclaims, D.P.'s parents V.P. and C.P. are opposed to D.P. being removed from CFD.

8. Consequently, CFD commenced this action pursuant to the Individuals With Disabilities Act ("IDEA") and a Supreme Court decision *Honig v. Doe,* 484 U.S. 305, 325-26 (1988) seeking to remove D.P. from CFD as a truly dangerous child.

9. As V.D. and C.P. are the parents of a D.P., the subject of this action, it seemed logical to name them as interested defendants even though no claims were alleged against them personally.

10. As CFD does not have any other recourse under the IDEA to seek to remove a truly dangerous child, CFD pursued the course it did for the protection of its staff and the other children at the school.

11. Your affiant has previously succeeded in this Court in obtaining a temporary restraining order through an argument under *Honig v. Doe* in the case *Maryhaven Center of Hope, Inc. v. Hacker,* 12 CV 5793 (E.D.N.Y. 2012) (Bianco, J.) to keep another truly dangerous child out of another residential school for children with developmental disabilities. See Exhibit A (Temporary Restraining Order) and Exhibit B (Complaint) and Exhibit C (Memorandum of Law submitted in support of a Temporary Restraining Order).

12. Consequently, as your affiant has succeeded in using *Honig v. Doe* to remove another dangerous child from a school, CFD's action could not be deemed frivolous and was not aimed at harassing D.P., V.P. and C.P.

13. The Remaining Defendants allege that CFD's action was frivolous because (a) *Honig v. Doe* only applies to public schools and not private schools like CFD and (b) a New York State regulation precluded CFD from seeking relief under *Honig v. Doe.*

14. The Remaining Defendants cite to no case law supporting their view, and, upon research, there is no case law that support their view.

15. As discussed in the accompanying Memorandum of Law, the language of *Honig v. Doe* does not appear to be limited to public schools, and it is questionable whether a New York State regulation can preclude CFD from seeking relief under *Honig v. Doe.*

16. Additionally, there is no reason why a Court could not grant supplemental CPLR Article 78 relief to direct a School District like the New York City of Department of Education ("DOE") to remove a dangerous child from a school.

17. Therefore, CFD's action was not frivolous, and was not aimed at harassing D.P., V.P., and C.P.

18. After CFD commenced this action in July, 2016, and upon the recommendation of the Plaintiff, the DOE changed D.P.'s IEP to include additional services to be provided by CFD.

19. The additional services were added on the hope that those services would at least provide protective or custodial intervention to prevent D.P. from further engaging in aggressive behavior.

20. Although it had promised to pay for the additional services, the DOE reneged on its promise.

21. Consequently, CFD amended its complaint in September, 2016 to add the supplemental claim that DOE was required to reimburse CFD for the additional services.

22. CFD did not immediately discontinue the *Honig v. Doe* action because it wanted to determine whether the additional services would indeed provide protective or custodial intervention to prevent D.P. from further engaging in aggressive behavior.

23. Once it was determined that the additional services did indeed provide protective or custodial intervention to prevent D.P. from engaging in aggressive behavior, there was no need to continue this action.

24. CFD then discontinued this action against DOE and brought the supplemental claim for reimbursement for the additional services against DOE in the Supreme Court, New York County where it is still pending.

25. CFD would have likewise dismissed this action against Remaining Defendants but for the fact that the Remaining Defendants filed counterclaims against CFD, necessitating this motion.

26. As the additional services did indeed provide protective or custodial intervention to prevent D.P. from engaging in aggressive behavior, CFD has no intention of bringing another *Honig v. Doe* action of the type brought here against D.P. and therefore can agree to the dismissal of its action with prejudice.

27. As CFD has no intention of bringing another *Honig v. Doe* action of the type brought here because of the changes in D.P.'s condition brought about by the additional services, there is no need for any other conditions to be placed on CFD.

28. Additionally, it is noted that the IEP that placed D.P. at CFD expires on June 30, 2017.

29.   It is understood that the DOE will be holding a CSE meeting on D.P. on May 25, 2017 to determine D.P.'s placement for the 2017-18 school year that commences on July 1, 2017.

30.   It is conceivable that DOE will recommend a placement other than CFD for the 2017-18 School Year and, considering the acrimonious relationship between CFD and D.P.'s parents, D.P.'s parents may accept the alternative placement.

31.   The Remaining Defendants are seeking attorneys fees against CFD on three theories: (a) the underlying action is allegedly frivolous, (b) entitlement to attorneys fees under FRCP 41(a)(2), and (c) entitlement to attorneys fees under the IDEA.

32.   As discussed above and as will be discussed in the accompanying Memorandum of Law, the underlying action is not frivolous and the Remaining Defendants have not filed the requisite papers for sanctions and attorneys fees as required under FRCP Rule 11.

33.   With regard to FRCP 41(a)(2), as will be discussed in the accompanying Memorandum of Law, CFD is withdrawing its action with prejudice and the Remaining Defendants cannot meet the Second Circuit's standards for obtaining attorneys fees in an action withdrawn with prejudice.

34.   With regard to the IDEA, as will be discussed in the accompanying Memorandum of Law, the Remaining Defendants are not "prevailing parties" entitling them to attorneys fees under the IDEA.

35.   With regard to the counterclaims, the Remaining Defendants concede that the Fourth through Sixth Counterclaims are purely State claims, and that the First through Third Counterclaims involve allegations that there are contracts requiring CFD to comply with the IDEA and are thus Federal claims.

36.    However, as will be discussed in the accompanying Memorandum of Law, the only non-moot and ripe relief the Remaining Defendants are seeking in the First through Third Counterclaims are monetary damages.

37.    As the IDEA does not allow for monetary damages as relief, the Remaining Defendants cannot collect monetary damages even if, arguendo, CFD violated any IDEA rights of the Remaining Defendants under the contracts.

38.    Therefore, this Court should grant CFD's application to dismiss this action with prejudice, deny any other conditions or attorneys fees to the Remaining Defendants, and dismiss the Counterclaims without prejudice to the Remaining Defendants commencing the Fourth through Sixth Counterclaims that are conceded to be based on State law in a New York State Supreme Court of their choice.

_____
ROBERT L. SCHONFELD

Sworn to before me this
10th Day of May, 2017

_____
Notary Public

BENJAMIN GEIZHALS
Notary Public, State of New York
No. 4608357
Qualified in Nassau County
Commission Expires April 30, 20 19

# Exhibit A

At the Courthouse for the United States District
Court for the Eastern District of New York on
the    Day of November, 2012

PRESENT:

Hon.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   Dec 5 2012   ★

LONG ISLAND OFFICE

United States District Court Judge

-----------------------------------------------------X

MARYHAVEN CENTER OF HOPE, INC.,

                    Plaintiff

**CV-12 5793**

ORDER TO SHOW
CAUSE and TEMPORARY
RESTRAINING ORDER

DOCKET NO.

            -against-

MATTHEW HACKER, his parents
PAUL HACKER and PATRICIA
CONROY, and the NORTHPORT-EAST
NORTHPORT SCHOOL DISTRICT,

                    Defendants

-----------------------------------------------------X

Upon reading the complaint, dated November 21, 2012, the affidavit of Lewis

Grossman, sworn to on the 2?th day of November, 2012, the affidavit of Robert L.

Schonfeld, sworn to on the 21st day of November, 2012, and the memorandum of law

submitted herewith.

LET defendants show cause before this Court at a hearing to be held on the

?? of December, 2012 at the District Courthouse for the United States District Court

for the Eastern District of New York, 200 Federal Plaza, Central Islip, New York at 2:30 p.m.

o'clock in the forenoon or as soon thereafter as counsel may be heard.

WHY a preliminary injunction order should not be entered pursuant to Rule 65 of

the Federal Rules of Civil Procedure and 20 U.S.C. Section 1415(i)(2)(B)(iii) directing

that defendant Matthew Hacker be removed from the residential school operated by the

Maryhaven Center of Hope, Inc. in Port Jefferson, New York, pending the outcome of

this action, and

A temporary restraining order is issued enjoining Matthew Hacker from returning

to the residential school operated by the Maryhaven Center of Hope, Inc. in Port

Jefferson, New York pending the hearing on the application for the preliminary

injunction.

Sufficient reason appearing therefore, let personal service of this order to show

cause and temporary restraining order on Matthew Hacker, Patricia Conroy, and the

Northport-East Northport School District along with overnight service on Paul Hacker at

his business in Gardiner, New York on or before the 6th day of December, 2012 be

deemed good and sufficient service thereof. 12/5/12

ENTER

_____
J.S.D.J.

# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

MARYHAVEN CENTER OF HOPE, INC.,

Plaintiff

-against-

MATTHEW HACKER, his parents
PAUL HACKER and PATRICIA CONROY, and
the NORTHPORT-EAST NORTHPORT
SCHOOL DISTRICT,

Defendants

------------------------------------------------------------------X

F i L e d
~~RECEIVED~~
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N Y.

★   NOV 26 2012   ★

LONG ISLAND OFFICE

**SUMMONS ISSUED**

~~COMPLAINT~~

DOCKET NO.

**CV - 12 5793**

BIANCO, J.

BOYLE, M

## INTRODUCTION

1.      Plaintiff Maryhaven Center of Hope, Inc. (hereinafter "Maryhaven") operates a

residential school which serves children with severe developmental disabilities.  Since

2008, Matthew Hacker ("Matthew"), an 18-year old with severe mental disabilities, has

attended Maryhaven.  Matthew has severely injured Maryhaven staff members and

students, and has especially exhibited aggressive behaviors towards women.

Consequently, pursuant to 20 U.S.C. §1415(i)(2)(B)(iii) and <u>Honig v. Doe</u>, 484 U.S. 305

(1988), plaintiff brings this action seeking an order removing Matthew from Maryhaven.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action, brought pursuant to 20 U.S.C.

§1415(i)(2)(B)(iii), through 20 U.S.C. §1415(i)(3)(A).

3.    As this is a civil action not founded solely on diversity of citizenship, defendant

Matthew Hacker resides in Suffolk County, and a substantial part of the events giving

rise to the claims in this action occurred in Suffolk County, venue in this District is

proper pursuant to 28 U.S.C. §1391(b).

## PARTIES

4.    Plaintiff Maryhaven operates a residential school for children with severe mental

retardation and developmental disabilities located in Port Jefferson, Suffolk County, New

York.

5.    Defendant Matthew Hacker was a resident of Maryhaven.  He current resides with

his mother, his custodial parent, in East Northport, Suffolk County, New York.

Matthew's mother, defendant Patricia Conroy, also resides in East Northport, Suffolk

County, New York.

6.    Defendant Paul Hacker is Matthew's father and, upon information and belief,

resides in Gardiner, New York.

7.    Defendant Northport-East Northport School District is a local educational

authority responsible under State and Federal law to develop and implement a free and

appropriate educational program for Matthew Hacker.  That authority is located in

Suffolk County, New York.

## FACTS

8.    Matthew Hacker is an 18-year old male who has attended Maryhaven since May,

2008.  His diagnoses are autism, mild intellectual disability, and impulse control

disorder/NOS.

9.     Matthew was placed in Maryhaven by the Northport-East Northport School District pursuant to the procedures of the Individuals With Disabilities Act.

10.    This action was precipitated by two aggressive actions taken by Matthew at Maryhaven on November 5, 2012.

11.    At about 6 a.m. that morning, Matthew called his mother from Maryhaven and told her that he didn't want to go to school because he didn't feel he belonged there and that he didn't want to see attractive females because they made him angry.

12.    Shortly thereafter, a female staff person from his class said good morning to him.

13.    Without any warning or provocation, Matthew punched her in the face several times and banged her head into the wall.

14.    As the staff was coming to help her, Matthew tried to squeeze her head between the hall door and the jamb and said to her "I'm going to snap your neck." The staff member suffered a strained neck and possibly a concussion.

15.    Staff then escorted Matthew back to his room when he ran past them to another student's room.

16.    Unprovoked and with much force, Matthew smashed the other student's head against the wall. The student had eight sutures to the top of his head.

17.    Based on those actions, Matthew was suspended from Maryhaven pursuant to the law, said suspension expiring pursuant to law on November 20, 2012.

18.    Upon information and belief, Matthew's grandfather has stated that Matthew's custodial parent would attempt to return Matthew to Maryhaven on November 27, 2012.

19.    Prior to the incidents of November 5, 2012, Matthew's behavior had become increasingly aggressive and violent over the past year.

20.     Maryhaven's greatest concern is that Matthew's deviant sexual behavior is marked by sadistic fantasies of hurting young attractive female staff members, graphic and threatening phone messages to these staff members, and aggressive acts towards these women and other persons who cue him to think about these women.

21.     Matthew's threats have included statements like "I want to put my foot in [her] mouth and rip out her heart and keep it like Snow White," "use her as a punching bag," "get a knife from the kitchen and stab her," and "cut her from the neck to her stomach and watch her insides fall out."

22.     In addition to the violent and graphic threats, Matthew has hurt many female staff members.

23.     His actions have included biting, throwing objects like chairs, desks, and computers, kicking, hitting and punching in the face, head butting, picking female staff up off the ground, bear hugs that hurt, pushing their chest, grabbing their stomachs, and spitting at them.

24.     Two female staff members are currently out due to injuries caused by Matthew.

25.     Sexuality education has been provided to Matthew, but despite a variety of supports, his anger has grown and his threats have increased and become more graphic.

26.     In sum, Matthew has displayed dangerous behaviors on a daily basis and is a danger to staff members and other students.

27.     Matthew's current placement at the Maryhaven School is not meeting his needs and cannot provide the level of support or safety to address his severe, frequent, intense and dangerous behaviors.

28.     Upon information and belief, the Northport-East Northport School District which has jurisdiction over Matthew has suggested alternative placements for Matthew, but Matthew's parents have refused those placements.

29.     Maryhaven is not a party with standing to seek an impartial hearing to require the placement of Matthew in any other school.

30.     As Matthew is inappropriate for his present placement, is truly a dangerous child, and presents a danger to the staff and other students, he should be removed from Maryhaven.

31.     Matthew could be served with home schooling until another more appropriate placement is found for him, and is currently being homeschooled at the home of the custodial parent.

32.     If Matthew were to remain at Maryhaven, he would likely continue to injure staff members and students at the school.

33.     In Honig v. Doe, 484 U.S. 305, 325-26 (1988), the United States Supreme Court noted:

> "The Department of Education has observed that, '[w]hile the [child's] placement may not be changed [during any complaint proceeding], this does not preclude the agency from using its normal procedures for dealing with children who are endangering themselves or others...' Such procedures may include the use of study carrels, timeouts, detention or the restriction of privileges. More drastically, where a student poses... an immediate threat to the safety of others, officials may temporarily suspend him or her for up to 10 school days... This authority, which respondent in no way disputes, not only ensures that school administrators can protect the safety of others by promptly removing the most dangerous of students, it also provides a 'cooling down' period during which officials can initiate IEP review and seek to persuade the child's parents to agree to an interim placement. And in those cases in which

> the parents of a truly dangerous child adamantly refuses to
> permit any change of placement, the 10-day respite gives
> school officials an opportunity to invoke the aid of the
> courts under Section 1415(e)(2) which empowers courts to
> grant any appropriate relief." (Emphasis Added).

34.     As Matthew is inappropriate for his present placement, is truly a dangerous child,

and his parents oppose a change of placement, plaintiff seeks to invoke the aid of the

Courts pursuant to 20 U.S.C. §1415(i)(2)(B)(iii) (formerly 20 U.S.C. Section 1415

(e)(2)).

35.     Indeed, plaintiff Maryhaven is not a party with standing to seek an impartial

hearing to require the placement of Matthew into any other school.

## COUNT I-IDEA

36.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through

"35" of this complaint.

37.     Because of his violent behavior toward staff and other students, Matthew is

presently inappropriate for his placement at Maryhaven and an emergency alternative

placement is necessary.

38.     Because of his more aggressive and violent behavior towards the staff and other

students, Maryhaven can no longer provide an appropriate educational program as

required by Matthew's most recent Individualized Educational Plan.

39.     Consequently, pursuant to Honig v. Doe, 484 U.S. 305 (1988) and the IDEA, this

Court should direct that Matthew Hacker be removed from Maryhaven.

WHEREFORE, it is respectfully requested that this Court:

    a) Direct that Matthew Hacker be preliminarily and permanently removed from

Maryhaven.

b) Award attorney fees to the plaintiff.

c) Grant such other relief as the court determines to be appropriate.

Dated:  Garden City, New York
        November 21, 2012

MORITT HOCK & HAMROFF LLP
Attorneys for Plaintiff
By:

ROBERT L. SCHONFELD
400 Garden City Plaza
Garden City, New York 11530
(516) 873-2000

380315v1

# Exhibit C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MARYHAVEN CENTER OF HOPE, INC.,

        Plaintiff

  -against-

MATTHEW HACKER, his parents
PAUL HACKER AND PATRICIA
CONROY, and the NORTHPORT-
EAST NORTHPORT SCHOOL
DISTRICT,

      Defendants

------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★  NOV 26 2012  ★

LONG ISLAND OFFICE

CV-12

DIANCO, J.

DOYLE, M

MEMORANDUM OF LAW OF PLAINTIFF IN
SUPPORT OF TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION

MORITT HOCK & HAMROFF LLP
Attorneys for Plaintiff
400 Garden City Plaza
Garden City, New York 11530
(516) 873-2000

380157v1

## INTRODUCTION

Plaintiff Maryhaven Center of Hope, Inc. ("Maryhaven") operates a residential school for children with developmental disabilities in Port Jefferson, New York. Defendant Matthew Hacker is an 18-year old child who has resided at that school.

While at the school, Matthew Hacker has engaged in aggressive and assaultive behavior that is explosive and sudden. His actions have resulted in injuries to many staff members and students, and he fantasizes about doing violence to women.

This action was commenced pursuant to the United States Supreme Court decision in Honig v. Doe, 484 U.S. 305 (1988) seeking a court order directing that Matthew Hacker be removed from the Maryhaven residential school. Because Matthew Hacker poses a present danger to the staff and students at Maryhaven, plaintiff seeks a preliminary injunction to remove Matthew Hacker from the residential school.

## FACTS

As stated in the accompanying affidavit of Lewis Grossman, pursuant to the procedures of the Individuals With Disabilities Education Act (IDEA), Matthew Hacker was placed at the residential school at Maryhaven by the Northport-East Northport School District.

As also discussed in detail in the Grossman affidavit, Matthew Hacker's aggressive and assaultive behavior has become more intense and frequent. He has injured many staff members and students, and particularly fantasizes about injuring women.

Most recently, on November 5, 2012, Matthew violently assaulted a female staff member and a student, causing severe injuries to both. Matthew was suspended on

1

November 6, 2012, but pursuant to the IDEA, the suspension could only take effect for ten school days.   The suspension has ended and Matthew's grandfather has indicated that Matthew's custodial parent will seek to return Matthew to Maryhaven on November 27, 2012.   Maryhaven cannot provide the level of support or safety to address his severe, frequent, intense and dangerous behaviors.

Maryhaven is not a party to the IDEA proceedings with the school district with standing to seek an impartial hearing to require the placement of Matthew Hacker into another school.   Plaintiff, thus, has commenced this action seeking to remove Matthew Hacker from the Maryhaven school.   Plaintiff has brought this application for a temporary restraining order and a preliminary injunction.

## ARGUMENT

PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION REMOVING MATTHEW HACKER FROM THE RESIDENTIAL SCHOOL AT MARYHAVEN.

As has been stated many times by the Second Circuit, to obtain a preliminary injunction, a party must show irreparable harm should the injunction not be granted and either the likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships decidedly in favor of the movant.   See, e.g., Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373 (2d Cir. 1997).

Irreparable harm is clearly present in this action.   Every day Matthew Hacker attends the Maryhaven residential school, he presents a danger to the Maryhaven staff. Every day Matthew Hacker attends the Maryhaven residential school, he is not able to receive an appropriate education as his disability is a mismatch for the Maryhaven residential school.

Plaintiff can also demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships decidedly in favor of the movant.  In <u>Honig v. Doe</u>, 484 U.S. 305, 325-26 (1988), the Supreme Court of the United States, when faced with a case involving a child with disabilities who allegedly posed a danger to the school, said:

> "… The Department of Education has observed that, "[w]hile the [child's] placement may not be changed [during any complaint proceeding], this does not preclude the agency from using its normal procedures for dealing with children who are endangering themselves or others… Such procedures may include the use of study carrels, timeouts, detention, or the restriction of privileges.  More drastically, where a student poses an immediate threat to the safety of others, officials may temporarily suspend him or her for up to 10 school days.  This authority, which respondent in no way dispute, not only ensures that the school administrators can protect the safety of others by promptly removing the most dangerous of students, it also provides a "cooling down" period during which officials can initiate IEP review and seek to persuade the child's parents to agree to an interim placement.  And in those cases in which the parents of a truly dangerous child adamantly refused to permit any change in placement, the 10-day respite gives the school officials an opportunity to invoke the aid of the courts under Section 1415(e)(2), which empowers courts to grant any appropriate relief."

See also, <u>Light v. Parkway C-2 School District</u>, 41 F.3d 1223, 1227-31 (8th Cir. 1994); <u>School Board of Pinellas County, Florida v. J.M.</u>, 957 F. Supp. 1252, 1257 (M.D. Fla. 1997) (courts relying upon <u>Honig v. Doe</u> to remove dangerous children from school settings.)

There are no impartial hearings or due process proceedings that Maryhaven can avail itself of—only the parents or the school district can be parties to the impartial hearings permitted under the IDEA.  In any event, under applicable state and federal

regulations regarding the right of pendency during appeals, the parents of Matthew Hacker could drag proceedings out for years.  Maryhaven's only choice in being able to protect its staff and other students is through this application to the court pursuant to Honig v. Doe requesting that this Court grant appropriate relief to further the aims of the IDEA and to protect school staff members and students from further harm.

As the defendants will not be able to demonstrate any legitimate reason to keep Matthew Hacker at Maryhaven when it cannot provide him with an appropriate education and continuing to keep him at the school would result in a substantial hardship on Maryhaven, its staff, and its other students, and Matthew Hacker can receive an appropriate education through home schooling, plaintiff can demonstrate a likelihood of success on the merits and irreparable harm and a preliminary injunction and a temporary restraining order should issue to the plaintiff.

### CONCLUSION

THIS COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION DIRECTING THAT MATTHEW HACKER BE REMOVED FROM THE RESIDENTIAL SCHOOL AT MARYHAVEN.

Dated:  Garden City, New York
November 21, 2012

MORITT HOCK & HAMROFF LLP
Attorneys for Plaintiff
By:

ROBERT L. SCHONFELD

4

Index No. 16CV3936 (MKB)(RER)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————————

THE CENTER FOR DISCOVERY, INC.,

Plaintiff,

-against-

D.P., his parents V.P. and C.P., and the
NEW YORK CITY DEPARTMENT OF
EDUCATION,

Defendants.

————————————————————————————

**REPLY AFFIDAVIT**

————————————————————————————

**MORITT HOCK & HAMROFF LLP**
*Attorneys for Plaintiff*
400 GARDEN CITY PLAZA
GARDEN CITY, NEW YORK 11530
516-873-2000