UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

THE CENTER FOR DISCOVERY, INC.,

      Plaintiff,

   v.

D.P., his parents V.P. and C.P.,

      Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
16-CV-3936 (MKB) (RER)

MARGO K. BRODIE, United States District Judge:

  Plaintiff The Center for Discovery, Inc. ("CFD"), commenced the above-captioned action against Defendants D.P., his parents V.P. and C.P. (collectively the "Family"), and former Defendant New York City Department of Education (the "DOE") on July 15, 2016,[1] seeking preliminary and permanent injunctive relief to remove D.P. from its premises pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1415 *et seq.* ("IDEA"), and *Honig v. Doe*, 484 U.S. 305 (1988). (Compl, Docket Entry No. 1.) On September 1, 2016, Plaintiff filed a motion to withdraw its request for a preliminary injunction, which motion was granted on September 2, 2016. (Letter Mot. to withdraw Preliminary Injunction, Docket Entry No. 15; Order dated September 2, 2016.) On September 9, 2016, Plaintiff filed an Amended Complaint, requesting permanent injunctive relief, attorneys' fees, and any other relief deemed appropriate. (Am. Compl. 9, Docket Entry No. 16.) On September 27, 2016, Defendants filed an Answer and Counterclaims to the Amended Complaint, asserting six counterclaims. (Answer & Countercls. ("A&C"), Docket Entry No. 18.) On April 7, 2017, Plaintiff moved to dismiss the action without

---

[1] Plaintiff voluntarily dismissed the DOE from the action without prejudice on November 2, 2016. (Stipulation and Order dated November 2, 2016, Docket Entry No. 25.)

prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, and to dismiss Defendants' counterclaims for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6), respectively, of the Federal Rules of Civil Procedure. (Pl. Mot. to Dismiss ("Pl. Mot."), Docket Entry No. 31; Pl. Mem. in Supp. of Pl. Mot. ("Pl. Mem."), Docket Entry No. 31-1.)  On May 2, 2017, Defendants opposed the motion to dismiss to the extent the dismissal of the action was without prejudice, and opposed the dismissal of their counterclaims.  (Defs. Opp'n to Pl. Mot. ("Defs. Opp'n"), Docket Entry No. 32; Defs. Mem. in Supp. of Defs. Opp'n ("Defs. Mem."), Docket Entry No. 32-1.)  In their opposition filing, Defendants also moved for sanctions and attorneys' fees pursuant to Rules 11 and 41(a)(2), respectively, of the Federal Rules of Civil Procedure, and IDEA.  (*See generally* Defs. Mem.) On June 27, 2017, the Court referred Plaintiff's motion to Magistrate Judge Ramon E. Reyes, Jr. for a report and recommendation.  (Order dated June 27, 2017.)

By report and recommendation dated July 17, 2017 (the "R&R"), Judge Reyes recommended that Plaintiff's motion to dismiss the action and the counterclaims be granted. (R&R, Docket Entry No. 35.)  On July 31, 2017, Defendants filed timely objections to the R&R. (Defs. Obj. to R&R ("Defs. Obj."), Docket Entry No. 36.)  Defendants filed supplemental objections on August 11, 2017.[2]  (Defs. Suppl. Obj. to R&R ("Defs. Suppl. Obj."), Docket Entry No. 38.)  For the reasons set forth below, the Court adopts the R&R as to the judgment in its entirety but only in part as to its reasoning.

---

[2]  On August 3, 2017, the Court granted Defendants an extension to file its supplemental objections more than fourteen days after the filing of the R&R as statutorily provided under 28 U.S.C. § 636(b)(1).  (Order dated Aug. 3, 2017.)

## I. Background

### a. Factual background

CFD operates a residential school that serves children with developmental disabilities.[3] (A&C ¶ 1.)  D.P. is a twelve-year old child with autism who has attended CFD since December of 2015.  (*Id.* ¶¶ 2, 17.)  V.P. and C.P. are the parents of D.P. and reside in Staten Island, New York.  (Am. Compl. ¶ 7; A&C ¶ 7.)

The DOE, following the recommendation of the Committee on Special Education ("CSE"), sent CFD an admissions package on behalf of D.P in October of 2015.  (A&C ¶¶ 4, 63–70.)  The admissions package included a detailed Individualized Educational Program ("IEP") describing D.P.'s disability, needs, and specific goals.  (*Id.*)  D.P.'s placement at CFD was "consistent with the placement procedures described in [IDEA]."  (*Id.*)  D.P.'s IEP disclosed that he had "engaged in aggressive, tantruming [sic] and self-injurious behaviors" which were a "manifestation of [a]utism."  (*Id.* ¶¶ 21–22.)  These self-injurious behaviors included "[p]ulling-out [his] teeth."  (*Id.* ¶ 68.)  The IEP also "specified that '[D.P.] requires a BIP [Behavior Intervention Plan] to address his aggressive behaviors.'"  (*Id.* ¶ 67.)  Following review of the application, CFD "notified the DOE it could provide D.P. the services set forth in the IEP . . . , and that it was offering admission."  (*Id.* ¶ 70.)  The DOE, V.P. and C.P. all agreed to accept the offer of admission, and D.P. began attending CFD on or about December 7, 2015.  (*Id.* ¶ 71.)

D.P.'s placement at CFD was made "pursuant to a contractual relationship between CFD

---

[3] As discussed *infra*, the parties' primary dispute concerns the resolution of Defendants' counterclaims.  The Court thus treats Defendants' Answer and Counterclaims as the principle operative pleading, and assumes the allegations therein to be true for purposes of assessing Defendants' counterclaims.  *See Ferring B.V. v. Fera Pharm., LLC*, No. 13-CV-4640, 2015 WL 127875, at *1 (E.D.N.Y. Jan. 8, 2015), *report and recommendation adopted as modified*, No. 13-CV-4640, 2015 WL 1359073 (E.D.N.Y. Mar. 24, 2015).

and the DOE" and another contractual relationship "between CFD and the State of New York through the [New York State Education Department ('NYSED')] and the Office for People with Developmental Disabilities ('OPWDD')." (*Id.* ¶¶ 73–74.) As part of these contractual relationships, "CFD has charged the DOE and the State [of New York] for services rendered . . . and has received payments." (*Id.* ¶ 74.)

During his time at CFD, D.P. exhibited self-injurious behaviors between December of 2015 and April of 2016, including self-extracting four teeth. (*Id.* ¶ 84.) D.P.'s behaviors, however, "were improving as of April [of] 2016 and he has not extracted another tooth to date." (*Id.* ¶¶ 85, 140.) Nevertheless, CFD's administration indicated that they "wanted to discharge D.P." (*Id.* ¶¶ 85– 86.) In or about April of 2016, CFD requested V.P. and C.P. "to cooperate in applying for D.P. to be admitted as a psychiatric inpatient to Spring Harbor Hospital in Westbrook, Maine." (*Id.* ¶ 94.) V.P. and C.P. agreed but the hospital denied D.P. admission. (*Id.* ¶ 95.) On May 25, 2016, CFD attempted to have D.P. admitted to Westchester County Medical Center over the protests of his parents. (*Id.* ¶ 97.) V.P. and C.P. went to the medical center where a psychiatrist told them that D.P. was "not medically appropriate" to be admitted. (*Id.* ¶ 107.) Accordingly, V.P. and C.P. attempted to return D.P. to CFD, to no avail. (*Id.* ¶¶ 108–17.)

On August 11, 2016, CFD gave the DOE and the Family two written proposals to add services to D.P.'s IEP: (1) "24-hour 1:1 paraprofessional aide"; and (2) "three hours daily of 1:1 applied behavior analysis ('ABA') provided by a clinician certified as a Board Certified Behavior Analyst ('BCBA')." (*Id.* ¶ 125.) CFD explained that "if these services were added to D.P.'s [IEP], then there would no longer be an issue of danger to self or others." (*Id.* ¶ 127.) The Family did not oppose the addition of these services, but did object to the ABA service being added to the IEP. (*Id.* ¶¶ 129–31.) V.P. and C.P. objected because they believed (1) the "service

was not necessary for D.P.'s continued placement at CFD," (2) were concerned that CFD's "assertion that the additional funding for the service . . . was already assured [was inaccurate]," and (3) that CFD would use any "problems with obtaining funding" to seek judicial relief "to remove D.P. from the school." (*Id.* ¶ 132.) The Family alleges on "information and belief" that CFD wanted to add the ABA service to the IEP so that it could "receive an enhanced rate for maintaining D.P.'s placement" or "seek[] a change of placement through the CSE process." (*Id.* ¶ 136.) On August 12, 2016, the DOE held a special meeting with the Family and CFD present, and the two proposals were added to D.P.'s IEP despite the protests of V.P. and C.P. (*Id.* ¶¶ 123, 137.)

### b. Procedural History

On July 15, 2016, CFD commenced this action against the DOE, V.P., C.P., and D.P, seeking a preliminary injunction to remove D.P. from school.[4] On September 1, 2016, CFD moved to withdraw its previously filed motion for a preliminary injunction, which motion was granted. (Letter Mot. to withdraw Preliminary Injunction.) CFD filed an Amended Complaint on September 9, 2016, requesting an order either that "D.P. be permanently removed from CFD in the event Defendant DOE continues to renege on its promise to pay for the additional safety services needed" or that "DOE . . . pay for the additional services needed by D.P. to remain at

---

[4] Plaintiff commenced this action prior to seeking any administrative remedies. In addition to arguing that there were no administrative remedies available to it as a private school under IDEA, (Am. Compl. ¶ 40), Plaintiff asserted in its pleadings that *Honig v. Doe*, 484 U.S. 305 (1988), allowed it to bring this action directly to federal court, (*id.* ¶ 43). In *Honig*, the Supreme Court held that school officials may pursue judicial relief pursuant to IDEA, prior to exhaustion of administrative remedies, in limited exigent circumstances. *Honig*, 484 U.S. at 327 ("[W]e have no reason to believe that Congress meant to require schools alone to exhaust [administrative remedies] in all cases, no matter how exigent the circumstances."). Although *Honig* involved public schools, CFD argued that it is applicable to private schools facing similar exigent circumstances. (Am. Compl. ¶ 43; Pl. Reply in Supp. of Pl. Mot. ("Pl. Reply") 3–5, Docket Entry No. 33-1.)

CFD . . . ." (Am. Compl. 9.)

On September 27, 2016, Defendants filed six counterclaims against CFD: (1) breach of contract as between CFD and New York State and the DOE; (2) breach of the duty of good faith and fair dealing as between CFD and New York State and the DOE; (3) violation of the New York Education Law and the Regulations of the Commissioner of Education; (4) breach of contract between CFD and Defendants to provide "three hours per day, seven days of the week, of 1:1 BCBA services to D.P."; (5) negligence; and (6) intentional and negligent infliction of emotional distress. (A&C ¶¶ 56–194.) As to the first two claims, Defendants based their arguments on the theory that they were third-party beneficiaries of contracts between the CFD and New York State and the DOE.

On April 7, 2017, CFD filed its Motion to Dismiss the Action pursuant to Rule 41(a)(2) as it is "seeking no Federal relief against the remaining Defendants D.P., V.P., and C.P." (Pl. Mem. 1, 4.) CFD also moved to dismiss the Family's six counterclaims pursuant to Rules 12(b)(1) and 12(b)(6). (*Id.* at 6–8.) The Family objects to the dismissal of the action unless it is "with prejudice, affirms that the counterclaims remain pending, and subjects the CFD to [six] terms and conditions."[5] (Def. Mem. 8–9.) CFD subsequently agreed to voluntary dismissal of

---

[5] The following are the six conditions Defendants demand:
  (1) CFD is barred from suing the Family in any jurisdiction seeking to remove the child from his current placement at CFD; (2) CFD is barred from attempting to remove D.P. from his current placement at CFD except pursuant to the applicable procedures in the IDEA, New York State Commissioner of Education Regulations, and CFD's contractual or regulatory obligations with the NYC DOE and relevant state agencies; (3) CFD is barred from attempting to remove D.P. from his current placement at CFD unless it has a "good faith, evidence-based belief" that CFD is not an appropriate placement for D.P. and that CFD is incapable of adjusting its program and services to suit D.P.; (4) CFD must provide special education and related

the action with prejudice but objects to the imposition of any additional conditions in the order. (Pl. Reply in Supp. of Pl. Mot. ("Pl. Reply") 1, Docket Entry No. 33-1.)

### c. The R&R

Judge Reyes recommended that Plaintiff's motion to dismiss the action be granted with prejudice, and that the motion to dismiss the counterclaims be granted without prejudice for failure to state a claim pursuant to Rule 12(b)(6), but denied for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

In recommending dismissal of the action with prejudice, Judge Reyes first determined that Defendants' counterclaims were all "compulsory[,] as they arise 'out of the transaction or occurrence that is the subject matter of the opposing party's claim,'" (R&R 7 (quoting Fed. R. Civ. P. 13(a)), — namely "[Plaintiff's attempt to remove D.P. and its pursuit of a preliminary injunction," (*id.* at 8). Accordingly, Judge Reyes found that Defendants would not be prejudiced by the dismissal of the action because the Court could retain jurisdiction over the compulsory counterclaims through supplemental jurisdiction. (R&R 6 n.7, 8.)

Judge Reyes also noted that *both* parties agreed the action could be dismissed with prejudice. (*Id.* at 8.) However, Judge Reyes declined to impose any additional conditions on the dismissal. As to the Rule 11 sanctions, Judge Reyes determined that Plaintiff's reliance on

---

services to D.P. according to his IEP in good faith, and without retaliating against the Family; (5) V.P. and C.P. shall be deemed "parents" who are "prevailing parties" within the meaning of the attorney's fees provisions of the IDEA and are granted leave to make a separate motion to determine the amount of reasonable attorney's fees and costs due to them; and (6) Pursuant to Rule 41(b)(2) and Rule 11(c)(1)-(3), CFD must show cause for why it should not pay sanctions to the Family and the Court for commencing this allegedly frivolous and vexatious action.

(R&R (citing Defs. Opp'n 8–9, 13–21).)

*Honig* to commence this action rather than seeking to exhaust its administrative remedies was not frivolous. (*Id.* at 17.) In addition, Judge Reyes found attorneys' fees to be unwarranted because Plaintiff's arguments were not frivolous, there was no proof of bad faith, and Defendants were not "a prevailing party" under IDEA. (*Id.* at 18–21.) Judge Reyes declined to impose the other conditions due to mootness and ripeness concerns. (*Id.* at 23.)

Judge Reyes recommended dismissal of all of Defendants' counterclaims pursuant to Rule 12(b)(6) without prejudice. In dismissing the counterclaims, Judge Reyes first determined that all the claims were ultimately brought pursuant to IDEA. (*See id.* at 10–14.) Accordingly, Judge Reyes determined that Defendants could not seek compensatory or punitive damages for claims based on IDEA. (*Id.*) Judge Reyes also found that Defendants had failed to adequately plead the elements of the Fourth, Fifth, and Sixth counterclaims for breach of contract, negligence, and infliction of emotional distress, respectively. (*Id.* at 13.) Defendants did not adequately allege, *inter alia*, a duty of care as to the Fifth Claim, and outrageous or extreme conduct as to the Sixth Claim. (*Id.* at 12–13.) Judge Reyes also dismissed the Fourth counterclaim because Defendants failed to explain the basis of the contract claim. (*Id.* at 13.) The Fourth counterclaim was also mooted because Plaintiff has "been providing D.P. with the services stated in his IEP." (*Id.* at 14.)

## II. Discussion

### a. Standards of reviews

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and

recommendation, the district court reviews *de novo* the parts of the report and recommendation

to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir.

2015). The district court may adopt those portions of the recommended ruling to which no

timely objections have been made, provided no clear error is apparent from the face of the

record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1

(E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only

conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016)

(holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court"

(citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written

objections to the [magistrate judge's] proposed findings and recommendations." (emphasis

add)); *see also Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Merely

referring the court to previously filed papers or arguments does not constitute an adequate

objection under . . . Fed. R. Civ. P. 72(b)").

### ii. Rule 41(a)(2)

A plaintiff may seek dismissal of an action pursuant to Rule 41(a)(2) of the Federal Rules

of Civil Procedure. Whether to grant dismissal is within the discretion of the Court. *Corrado v.

New York State Unified Court Sys.*, 698 F. App'x 36, 37 (2d Cir. 2017). Rule 41(a)(2) provides in

relevant part:

> Except as provided in Rule 41(a)(1), an action may be dismissed at
> the plaintiff's request only by court order, on terms that the court
> considers proper. If a defendant has pleaded a counterclaim before
> being served with the plaintiff's motion to dismiss, the action may
> be dismissed over the defendant's objection only if the counterclaim
> can remain pending for independent adjudication.

Fed. R. Civ. P. 41(a)(2). Any such dismissal is without prejudice unless the dismissal order

otherwise provides. *Id.* Although "[v]oluntary dismissal without prejudice is . . . not a matter of

right," *Corrado*, 698 F. App'x at 37 (quoting *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)), "[g]enerally . . . 'a voluntary dismissal without prejudice . . . will be allowed 'if the defendant will not be prejudiced thereby.'" *Riley v. United States*, 78 F. App'x 774, 776 (2d Cir. 2003) (quoting *Cantanzano v. Wing*, 277 F.3d 99, 109 (2d Cir. 2001)); *see also Ascentive, LLC v. Opinion Corp.*, No. 10-CV-4433, 2012 WL 1569573, at *2 (E.D.N.Y. May 3, 2012) ("Although voluntary dismissal without prejudice is not a matter of right, there is a presumption in this circuit that generally motions to dismiss claims without prejudice should be granted.").

The Second Circuit has recognized that "[t]wo lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper." *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (quoting *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). The first "indicates that such a dismissal would be improper 'if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit.'" *Kwan*, 634 F.3d at 230 (quoting *Camilli*, 436 F.3d at 123). The second line of authority "indicates that the test for dismissal without prejudice involves consideration of various factors, known as the *Zagano* factors." *Id.* (quoting *Camilli*, 436 F.3d at 123); *see generally Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990). The *Zagano* factors include: "(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss." *Kwan*, 634 F.3d at 230; *see also Zagano*, 900 F.2d at 14. "These factors are not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive." *Kwan*, 634 F.3d at 230.

### iii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### b. Unopposed portions of the R&R

Neither party objects to the following recommendations: (1) dismissal of the Amended Complaint with prejudice; (2) dismissal of Plaintiff's 12(b)(1) motion on the grounds that the Court retains jurisdiction over Defendants' compulsory counterclaims; and (3) dismissal of Defendants' Fourth counterclaim on mootness grounds. Finding no clear error, the Court adopts

these recommendations.[6]

### c. Defendants' objections to the R&R

Defendants object to the dismissal of the action without the imposition of the special conditions on Plaintiff. (Defs. Obj. 2.) As to the Rule 11 sanctions and attorneys' fees, Defendants argue that Judge Reyes erred by not finding that they were "successful in causing Plaintiff to abandon its attempt to secure a preliminary or permanent injunction removing D.P. from the school." (*Id.* at 3.) In addition, Defendants argue that Judge Reyes should have considered their "proof" in the form of their allegations that the action was "commenced for the ulterior, now explicit, purpose of obtaining increased tuition payments from the DOE." (*Id.*) Defendants also claim that Judge Reyes erred by not finding Plaintiff's reliance on *Honig* to be frivolous. (*Id.* at 9.) Defendants argue, *inter alia*, that *Honig* "cannot reasonably be read as allowing a nonpublic school . . . to bring an injunction . . . under the IDEA to expel and physically remove a student," and that Judge Reyes' reference to *Maryhaven Center of Hope, Inc. v. Hacker*, No. 12-CV-5793 (E.D.N.Y. 2012), as "precedent" was in error. (Defs. Obj. 11.) Defendants assert that the lack of case law applying *Honig* to private schools should create the inference that Plaintiff's argument was "so obvious[ly] [incorrect] to attorneys." (*Id.* at 10–12.) Defendants also object to the dismissal of the conditions designed to prevent the removal of D.P. from Plaintiff's school because their concerns are not moot. (*Id.* at 2.) Defendants assert that Judge Reyes "erred in crediting Plaintiff's counsel's . . . representation that [Plaintiff's]

---

[6] Defendants mistakenly argue that dismissal of the action without prejudice would have created a "presumption" of attorneys' fees. (Defs. Opp'n 19.) While attorneys' fees are more common for dismissals without prejudice as compared to with prejudice, "[a] fee award . . . is not automatic." *Hinfin Realty Corp. v. Pittston Co.*, No. 00-CV-4285, 2014 WL 1653209, at *1 (E.D.N.Y. Apr. 23, 2014). Courts in this district often require "a showing of bad faith or vexatious conduct on behalf of the plaintiff before granting fees," under Rule 41, even as to dismissals without prejudice. *Id.* (collecting cases).

contractual and regulatory compliance obligations with regard to D.P.'s continuing enrollment . . . expired at the end of the 2016-2017 school year." (*Id.* at 2.) Defendants argue that Plaintiff has a general contract with the DOE for the period of July 1, 2015 to June 30, 2020 to provide services to students. (*Id.* at 7–8.) In their supplemental objections, Defendants also argue that the recent dismissal of Plaintiff's Article 78 proceeding has increased the likelihood of retaliation against D.P. (Defs. Suppl. Obj.)

Defendants also object to dismissal of their counterclaims without prejudice. Defendants argue that Judge Reyes erred in finding compensatory damages unavailable under IDEA, specifically with regards to the contract claims. (Def. Obj. 2–4.) In particular, Defendants object to Judge Reyes' reliance on case law involving public schools which they argue is "irrelevant to [their] claim[s] against [Plaintiff], a nonpublic school." (Def. Obj. 4.) Defendants also object to Judge Reyes' finding that they failed to adequately plead the elements to the Third, Fifth, and Sixth counterclaims. (Defs. Obj. 4.)

### d. Defendants' counterclaims fail to state a claim

#### i. First, Second, and Third counterclaims

Plaintiff argues that the Court should dismiss Defendants' First, Second, and Third counterclaims because compensatory damages are unavailable under IDEA, and equitable relief is unavailable because the rest of the case is moot. (Pl. Mem. 6–7; Pl. Reply 7.) In addition, Plaintiff argues that Defendants have failed to specify which "portion of the alleged contracts oblige . . . compl[iance] with . . . IDEA or even w[hich] section[s] of . . . IDEA" has been breached. (Pl. Mem. 6.) Defendants failed to address these arguments directly in their

opposition filings.[7]  Rather, Defendants only addressed the sufficiency of their claims with

regard to *jurisdictional* matters.  (*See generally* Defs. Opp'n.)  Requesting that the Court retain

jurisdiction, Defendants assert that their first three counterclaims all "arise from contractual

agreements (or state laws) that are made pursuant to, or to implement, a federal law or program"

— namely, IDEA.  (Defs. Mem. 22.)

### 1. Defendants fail to sufficiently allege the existence of contracts and third-party beneficiary status for the First and Second counterclaims

Defendants fail to adequately allege the existence a contract to which they are the

intended third-party beneficiaries.  Thus, the First and Second counterclaims for breaches of

contract and the duty of good faith and fair dealing fail to state a claim.

"[A]bsent a contractual relationship there can be no contractual remedy."  *Hillside Metro*

*Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014) (quoting

*Suffolk Cty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984)).  "Such a relationship

exists if the plaintiff is in privity of contract with the defendant or is a third-party beneficiary of

the contract."  *Id.*  "[T]o succeed on a third party beneficiary theory, a non-party must be the

---

[7]  In their objections to the R&R, Defendants requested that the Court consider new arguments and evidence they had failed to present to Judge Reyes.  (*See* Defs. Obj. 4–17.) Defendants argue that they should be allowed to raise new arguments and allegations because "Plaintiff's reply papers [before Judge Reyes] contained some new arguments and allegations." (*Id.* at 4.)  To the extent the new allegations were submitted in response to the Rule 12(b)(6) motion to dismiss the contract claims, the Court notes that Plaintiff had argued in its *moving papers* the lack of sufficient details as to the purported contractual relationships at issue.  This issue Defendants now seek to address for the first time in their objections to the R&R should have been raised in their opposition to Plaintiff's motion.  (*See* Pl. Mem. 6–7); *New York State Citizens' Coalition for Children v. Velez*, No. 10-CV-3485, 2017 WL 4402461, at *1 (E.D.N.Y. Sept. 29, 2017) ("Furthermore, even on *de novo* review, a district judge will nevertheless ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance." (internal quotation marks omitted) (quoting *Kennedy v. Adamo*, No. 02-CV-1176, 2006 WL 3704784, *1 (E.D.N.Y. Sept. 1, 2006))).

intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed." *Id.* In the case of government contracts, individual members of the public are presumed to be incidental beneficiaries unless a different intention is manifested. *See Grunewald v. Metro. Museum of Art*, 3 N.Y.S.3d 23, 25 (App. Div. 2015) ("Government contracts often confer benefits to the public at large . . . . That is not . . . a sufficient basis in itself to infer the government's intention to make any particular member of the public a third party beneficiary, entitled to sue on such contract." (citations omitted)). "In order for the benefit to be direct, it must be primary and immediate in such a sense and to such a degree as to demonstrate the assumption of a duty to provide a direct remedy to the individual members of the public if the benefit is lost." *Id.* (citation omitted).

Courts in other jurisdictions have applied the above principles to find special needs students to be third-party beneficiaries of contracts between private schools and the public entities in charge of implementing IDEA. *See, e.g.*, *Smith v. James C. Hormel Sch. of Virginia Inst. of Autism*, No. 08-CV-00030, 2010 WL 1257656, at *17 (W.D. Va. Mar. 26, 2010) ("[I]n the IDEA context, courts have found that individual students can be third party beneficiaries to contracts with private schools providing for educational services."); *Bishop v. Oakstone Acad.*, 477 F. Supp. 2d 876, 887 (S.D. Ohio 2007) (finding plaintiff is third-party beneficiary to contract for provision of plaintiff's education because he was the person the contract anticipated receiving the benefit of [private school's] services); *P.N. v. Greco*, 282 F. Supp. 2d 221, 240 (D.N.J. 2003) (finding private school liable on third-party beneficiary claim for breach of contract with school district providing for educational services to plaintiff); *see also St. Johnsbury Acad. v. D.H.*, 240 F.3d 163, 172–73 (2d Cir. 2001) ("We do not mean to imply that arrangements between a public agency and a private school are not enforceable against the

private school."). These cases indicate, however, that not all contracts between private schools and public entities may be enforced by third parties. *See Smith*, 2010 WL 1257656, at *17 (finding special needs student not to be third-party beneficiary of contract between private school and public entity where the agreement "did not mention [the student] by name or provide for his education at [the school]" and was not an enrollment agreement); *see also New York City Health & Hosps. Corp. v. WellCare of New York, Inc.*, 801 F. Supp. 2d 126, 137 (S.D.N.Y. 2011) ("Courts are hesitant to allow suits by third-party beneficiaries to enforce statutory requirements incorporated into contracts with the government where there is no private right of action under the statute, because the third-party suit 'is in essence a suit to enforce the statute itself.'" (quoting *Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110, 118 (2011))).

Defendants fail to plead sufficient, non-conclusory allegations to state contract claims in the First and Second counterclaims, based on the theory that they are third-party beneficiaries of any contracts between Plaintiff and the DOE and/or the State of New York. In lieu of identifying any specific contracts, Defendants repeatedly assert that "D.P's placement was pursuant to a contractual relationship . . . ." (A&C ¶¶ 72, 73, 147, 148.) Defendants also allege in a conclusory manner and without explanation, that they are the "intended beneficiaries" of the unidentified contracts. (*Id.* ¶¶ 75, 149, 156.) These conclusory allegations are insufficient to state a claim.[8] Furthermore, Defendants' arguments for maintaining jurisdiction suggest that

---

[8] Defendants argue in their objections that they should be excused from alleging their claims with "specificity" because they "did not . . . have access to a copy of the contract between [Plaintiff] and DOE." (Defs. Obj. 4.) However, Defendants failed to even describe the nature of these contracts other than to allege that D.P.'s enrollment was pursuant to a "contractual relationship" and that Plaintiff was "obligated to comply with the Education Law and the federal IDEA." (A&C ¶¶ 72, 73, 76.) Such bare assertions are insufficient to withstand a motion to dismiss. At the very least, Defendants needed to provide a statement of facts explaining the reason behind their belief in the existence of a contract, the terms of the contract, and why they

their first two counterclaims are based on contracts to which they may not be considered third-party beneficiaries as a matter of law. (*See* Pl. Opp'n 21–22 (discussing "contracts between local school districts and state-approved nonpublic special education schools" that do not appear to be specific to individual students)); *Smith*, 2010 WL 1257656, at *17; (*see also* Defs. Obj. 5 ("The DOE uses a standard form of agreement . . . It is a master agreement, applying to all students placed at the school . . . There is not an individual contract for each student.").)[9] Accordingly, the Court dismisses the first two counterclaims without prejudice.

### 2. Defendants fail to provide a basis to bring a private cause of action under New York Education Law and the Regulations of the Commissioner of Education

Defendants' Third counterclaim for violation of New York Education Law and the Regulations of the Commissioner of Education appears to be an IDEA claim in disguise. Courts, however, have almost unanimously held IDEA does not apply to private schools. *See St. Johnsburg Academy*, 240 F.3d at 171–72 (holding that the text of IDEA and its implementing regulations all compel the conclusion that IDEA does not apply to private schools); *see also McElroy v. Pac. Autism Ctr. for Educ.*, No. 14-CV-04118, 2016 WL 3029782, at *11 (N.D. Cal. May 27, 2016) ("With the exception of the District of New Jersey, every court to have considered

---

should be considered third-party beneficiaries of that contract. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) ("Although it is true that matters peculiarly within a defendant's knowledge may be pled 'on information and belief,' this does not mean that those matters may be pled lacking any detail at all." (citation omitted)); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("[T]he allegations must be accompanied by a statement of the facts upon which the belief is based." (citations omitted)).

[9] Defendants did not provide any specific allegations about the "Master Contract" prior to their objections. The Court notes that Defendants cannot amend their pleadings through their motion papers, let alone objections following completed briefing on a motion to dismiss. *See Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs."), *aff'd*, 157 F. App'x 398 (2d Cir. 2005). Furthermore, as discussed above, the contract described in the objections suggest that Defendants were not third-party beneficiaries.

the issue has concluded that the IDEA does not apply to private schools because private schools are not a 'State educational agency, State agency, or local educational agency.'").

In their Answer and Counterclaims, Defendants failed to identify the authority pursuant to which they have a private cause of action under New York Education Law and the Regulations of the Commissioner of Education. (*See* A&C ¶¶ 158–62.) Defendants conclusorily asserted that they "have a statutory right of action against [Plaintiff] to enforce compliance by a non-public school with that statutory framework when non-compliance is causing them an injury in fact." (*Id.* ¶ 160.) Although Defendants cited to 8 N.Y.C.R.R. §§ 200.7 and 200.9 in their Answer and Counterclaims, these regulations do not appear to give rise to a private cause of action. In light of these issues, in their opposition filing, Defendants requested that the "Answer be deemed amended to more explicitly state that the private right of action is embedded in the IDEA implementation structure." (Defs. Opp'n 22 n.13.)

To the extent Defendants brought the Third counterclaim directly under IDEA, the claim is dismissed with prejudice because there is no private right of action under IDEA or New York Education Law against private schools. *See St. Johnsburg Acad.*, 240 F.3d at 171–72; *In re Pelose ex rel. Pelose*, 885 N.Y.S.2d 816, 818 (App. Div. 2009) (holding certain New York Education Law and IDEA provisions did not apply because "such provisions apply to public school districts, and not to respondent, a nonpublic school" (citations omitted)); *id.* ("[T]he central purpose of the IDEA (*see* 20 USC § 1400[d][1][A]) and article 89 of the Education Law (*see generally* § 4401[1]) is to afford a 'public' education for children with disabilities."); *see also Polera v. Bd. of Educ.*, 288 F.3d 478, 486 (2d Cir. 2002) (holding that compensatory damages are unavailable under IDEA). To the extent the Third counterclaim is based on the

alleged contracts, the claim is dismissed without prejudice for failure to state a claim.[10]

### ii. Fifth and Sixth counterclaims

Plaintiff argues that the Court should dismiss Defendants' Fifth and Sixth counterclaims for negligence and infliction of emotional distress because compensatory damages are also unavailable under IDEA for state tort claims. (Pl. Mem. 7–8.) Plaintiff also contends that Defendants failed to adequately allege the elements of both claims. (*Id.* at 8.) Defendants failed to respond to Plaintiff's arguments, addressing only jurisdictional implications raised by the claims. (Defs. Opp'n 24.)

#### 1. Defendants fail to adequately allege the elements of their Fifth counterclaim for negligence

"The elements of a negligence claim under New York law are: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'" *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015), *as amended* (Nov. 23, 2015) (citations omitted). "If the defendant owes no duty to the plaintiff, the action must fail." *Id.*

Defendants fail to provide any non-conclusory allegations as to what duty of care

_____

[10] In this Memorandum and Order, the Court does not take a position as to whether compensatory damages are available under any contract claims that purport to require adherence to IDEA. The Court notes the conflict such a finding would create with the reasoning in *Polera v. Board of Education*, 288 F.3d 478 (2d Cir. 2002). In *Polera*, the Second Circuit determined that monetary damages are not available under IDEA based on the very *purpose* of the statute. The Second Circuit reasoned that "[t]he purpose of the IDEA is to provide education services, not compensation for personal injury, and a damages remedy . . . is fundamentally inconsistent with this goal." *Id.* at 486. "A third-party suit to enforce [a contract requiring adherence to IDEA between a private school and public entity] . . . is in essence a suit to enforce the statute itself." *Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110, 111 (2011). As to the circumstances in this action, the Court also questions whether Defendants can prove the availability of damages to the extent D.P. continued to be enrolled at CFD. *See Kassover v. Prism Venture Partners, LLC*, 862 N.Y.S.2d 493, 498 (App. Div. 2008) (finding third-party beneficiaries to agreement to have the "right to enforce its *terms*" (emphasis added)).

Plaintiff violated. As Judge Reyes aptly explained, "[b]eyond the conclusory statements that [Plaintiff] owed [Defendants] a 'heightened' duty of care, the Fifth Counterclaim fails to state precisely *what* the duty was, *how* this duty was violated, and *how* it caused the harms alleged." (R&R 12.) The Answer and Counterclaims merely allege that "[Plaintiff] owed a duty of care to D.P. based on common law and based on statutory rules of conduct in the Education Law and the IDEA." (A&C ¶ 179.) Even in their objections to the R&R, Defendants conclusorily argue that "[b]ecause the conduct of [Plaintiff] was blatantly in violation of its contract with the DOE, breached applicable laws and regulations, and was contrary to basic decency . . . the Fifth and Sixth Counterclaims should not be dismissed." (Defs. Obj. 10.) These bare assertions are insufficient to withstand a motion to dismiss. Further, to the extent Defendants now argue that the duty of care is provided by the alleged contracts, the Court notes that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clemens Realty, LLC v. New York City Dep't of Educ.*, 850 N.Y.S.2d 172, 173 (App. Div. 2008) (citations omitted). Accordingly, the Court dismisses Defendants' Fifth counterclaim for negligence without prejudice.

### 2. Defendants fail to adequately allege the elements of their Sixth counterclaim for intentional and negligent infliction of emotional distress

#### A. Intentional infliction of emotional distress

To state a claim for intentional infliction of emotional distress in New York, a plaintiff must allege that the defendant engaged in "extreme and outrageous conduct, which so transcends the bounds of decency so as to be regarded as atrocious and intolerable in a civilized society." *Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44, 47 (2d Cir. 2016) (quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014)). "To prevail on such a claim, a plaintiff must establish that there was 'extreme and outrageous conduct,' that the conduct was

undertaken with 'intent to cause, or disregard of a substantial probability of causing, severe emotional distress,' and that the conduct did in fact cause severe emotional distress." *Turley*, 774 F.3d at 157–58 (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)); *see also Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) ("Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto*, 164 F.3d at 827.

Moreover, intentional infliction of emotional distress is a "highly disfavored [tort] under New York law," *Turley*, 774 F.3d at 158 (quoting *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 345–46 (S.D.N.Y. 2000)), and it is "to be invoked only as a last resort," *id.* (quoting *McIntyre v. Manhattan Ford, Lincoln–Mercury, Inc.*, 682 N.Y.S.2d 167, 169 (App. Div. 1998)). "[A]lthough the New York Court of Appeals has not set forth detailed guidelines for when the tort [of intentional infliction of emotional distress] may be available, it has cautioned that a claim for [intentional infliction of emotional distress] may not be sustainable 'where the conduct complained of falls well within the ambit of other traditional tort liability.'" *Id.* at 159 (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557–58 (1978)); *see also Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) ("[U]nder New York law, an intentional infliction tort 'may be invoked only as a last resort . . . to provide relief in those circumstances where traditional theories of recovery do not.'" (citations omitted)); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 730, (S.D.N.Y. 2017) (quoting *Salmon*, 802 F.3d at 256). For example, "[o]ther New York

courts have applied this *dictum* to exclude claims for intentional infliction where a cause of

action for defamation may be asserted on the facts of the case." *Turley*, 774 F.3d at 159

(collecting cases).

Defendants fail to state a claim for intentional infliction of emotional distress. As Judge

Reyes explained, "[t]he Sixth Counterclaim fails to explain *why* CFD's conduct should be

deemed extreme or outrageous, *how* such conduct caused the Family's 'distress,' or *why* such

distress was 'severe.'" (R&R 13.) As discussed above, the objections, even if considered, also

fail to add any more specificity to the bare assertions in the Answer and Counterclaims.

### B. Negligent infliction of emotional distress

"Under New York law, a plaintiff may establish [a claim for negligent infliction of

emotional distress] in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty

theory.'" *Lloyd*, 246 F. Supp. 3d at 730 (quoting *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir.

2000)). The "bystander theory" provides that:

> A defendant's conduct is negligent [where it creates]
> an *unreasonable risk of bodily harm to a plaintiff* and such conduct
> is a substantial factor in bringing about injuries to the plaintiff in
> consequence of shock or fright resulting from his or her
> contemporaneous observation of a serious physical injury or death
> inflicted by the defendant's conduct on a member of the plaintiff's
> immediate family in his or her presence.

*Baker*, 239 F.3d at 421 (emphasis added) (quoting *Bovsun v. Sanperi*, 61 N.Y.2d 219, 224

(1984)). Under the "direct duty" theory, "a plaintiff suffers emotional distress caused by [a]

defendant's breach of a duty which unreasonably endangered [the plaintiff's] own physical

safety." *Id.* (citation and internal quotation marks omitted).

Defendants fail to plead a claim for negligent infliction of emotional distress under either

theory. The Answer and Counterclaims fail to allege what risk of bodily harm was created by

Plaintiff. Moreover, as to the second theory, as discussed above, Defendants have failed to

sufficiently allege any duty owed by Plaintiff. Accordingly, the Court dismisses Defendants'

Sixth counterclaim for intentional and negligent infliction of emotional distress without

prejudice.

### e. Discretionary terms and conditions

Despite agreeing to dismissal of Plaintiff's action with prejudice, Defendants also seek to

impose the following six conditions:

- Plaintiff shall not sue [Defendants] in any jurisdiction seeking to remove [D.P.] from his current placement [with Plaintiff];

- Plaintiff shall not attempt to remove the child from his current placement [with Plaintiff] except pursuant to the applicable procedures of [IDEA and other relevant statutes and contractual and regulatory obligations];

- Plaintiff shall not attempt to remove the child from his current placement [with Plaintiff] unless it has a good faith, evidenced based belief, that [Plaintiff] is not an appropriate placement for D.P. and that [Plaintiff] is incapable of adjusting its program and services to provide appropriate special education and related services for D.P.;

- Plaintiff shall provide special education and relates services to D.P. according to his [IEP] in good faith, and without retaliating against [Defendants];

- [Defendants V.P. and C.P.] shall be deemed "parents" who are "prevailing parties" within the meaning of the attorney's fee provisions of [IDEA];

- Pursuant to Rule 41(b)(2) and Rule 11(c)(1)-(3) Plaintiff and its attorneys must show cause why they should not pay sanctions to the [Defendants] and to the Court for commencing this action . . . ;

(Defs. Opp'n 8–9.)

### i. Sanctions under Rule 11(c)(1)-(3)

Defendants argue that sanctions are warranted for three reasons: (1) Plaintiff initiated a

frivolous action; (2) Plaintiff's conduct was "unduly vexatious"; and (3) Plaintiff's action caused

significant expenditure of "efforts and expense."

## 1. Rule 11 sanctions are inappropriate under the circumstances of this case

Defendants argue that Rule 11 sanctions are appropriate based primarily on Plaintiff's

reliance on *Honig*. (Defs. Opp'n 9–13.) They assert *Honig* cannot plausibly have been

interpreted to allow a private school to bypass administrative remedies to seek the removal of a

special needs student, particularly by suing the local school district with whom they have

contracted to provide services and the parents of the student. (*Id.* at 10–11.) Defendants also

contend that *Honig* is inapposite because the students in *Honig* were "emotionally disturbed

adolescents," "the [s]chools in *Honig* had sought the support of public school officials in

identifying appropriate alternative placements," and the removal was pursuant to a "tuition

dispute" rather than exigent circumstances. (*Id.* at 11–13.) Plaintiff argues that its reliance on

*Honig* was in good-faith, and that counsel has previously obtained a temporary restraining order

on behalf of a "non-public school" in another action using the same case interpretation.[11] (Pl.

Reply 3–4.) Moreover, Plaintiff argues that while *Honig* involved public schools, Defendants

fail to provide any case law that suggests the holding of the case "only applied to public schools

or could not be extended to private schools." (*Id.* at 4.) Similarly, Plaintiff argues that under its

good-faith interpretation of *Honig*, the DOE could not be understood to be able to "supersede a

right [provided] . . . under . . . United States Supreme Court precedent." (*Id.* at 5.) Plaintiff also

---

[11] Defendants devote much of their objections to Judge Reyes' use of the term "precedent" in reference to *Maryhaven Center of Hope, Inc. v. Hacker*, No. 12-CV-5793 (E.D.N.Y. 2012), the action in which Plaintiff obtained a temporary restraining order. (Pl. Obj. 12–13.) The Court notes that Judge Reyes used the term not because it was binding legal authority but to acknowledge that "a competent attorney could form a reasonable belief that the pleadings were not frivolous and meritless." (R&R 18.)

asserts that its actions were borne out of a desire to "protect its staff and other students and to find a more appropriate placement for D.P." (*Id.* at 3.)

Rule 11 of the Federal Rules of Civil Procedure provides that a court may impose sanctions either by motion or by its own initiative, when (1) a pleading, written motion or other paper is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2) the claims, defenses and other legal contentions raised are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" (3) the factual contentions do not have any evidentiary support or are unlikely to have any evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are not warranted on the evidence or are not "reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)-(c); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("Sanctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous."). "[E]ven when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion.'" *Ipcon Collections*, 698 F.3d at 63 (quoting *Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir. 2004)). Enforcing Rule 11 requires "notice and a reasonable opportunity to respond," and "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c).

Under the circumstances, the Court finds that Rule 11 sanctions are unwarranted. Without concluding in favor of either party's construction of *Honig*, the Court finds Defendants'

distinctions of the holding in that case to this present action to be unpersuasive.  At its core, *Honig* stands for the proposition that under exigent circumstances, schools may bypass administrative remedies and seek judicial relief to address problematic students under the IDEA. The Supreme Court did not condition a school's exercise of this, albeit limited, discretion on a seal of approval by the local department of education.  *See generally id.*  The inclusion of private schools into the education of special needs students introduces *an additional party* not present in *Honig*.  (*See* R&R 17 ("*Honig* was ultimately silent as to the standing of non-public schools, like CFD.").)  This change in dynamics may create unforeseen consequences, including conflicts with parents and local authorities as evinced by this litigation, that require novel applications or extensions of existing case law.[12]  The Court would be remiss if it did not note that Defendants themselves have advanced several novel theories with regard to the application of IDEA to private schools.  Based on their own unsupported arguments, Defendants understand that the advancement of novel theories or unique interpretations of case law cannot be the sole basis for Rule 11 sanctions.  Defendants effectively request the Court to sanction Plaintiff for the very same actions they have undertaken.[13]

The other factual distinctions on which Defendants rely are equally unpersuasive. Defendants argue that the students in *Honig* were "dangerous emotionally disturbed adolescents" while "D.P. is a little boy with autism."  (Defs. Opp'n 12.)  At issue in *Honig* was the

---

[12]  In their objections, Defendants raise a new argument that a global contract between Plaintiff and the DOE conclusively bars reliance on *Honig*.  But Defendants' own citation states that schools may "suspend, expel, or discharge a student . . . in accordance with applicable legal procedures."  (Defs. Obj. 12.)  If its reading of *Honig* is correct, Plaintiff would have been acting "in accordance with applicable legal procedures."

[13]  Indeed, Defendants have ignored on-point, *binding* case-law, in presenting several of their arguments but Plaintiff has not sought sanctions.

manifestation of the students' disabilities rather than their specific diagnosis. *See Honig*, 484 U.S. at 327. In addition, the Court cannot ignore Defendants' own admissions that D.P. is prone to "inappropriate behaviors 'such as tooth picking, aggression and tantrum.'" (A&C ¶ 68.) While D.P. may be a child, his classmates presumably are as well. More importantly, *Honig* could plausibly be read to apply to situations where schools considered themselves ill-equipped to prevent *self-harm*. Furthermore, Defendants mistakenly apply their *allegations* as truth. They argue that this action was instituted to serve as "leverage" in a tuition dispute. Plaintiff contends that the extra tuition was *necessary* in order to provide additional care so that they could provide services to prevent the troublesome behavior exhibited by D.P.[14] In light of the intersection between contract principles, IDEA, and *Honig* presented in this action, the Court cannot conclude, based on the limited information before it, that Plaintiff was acting in bad-faith by asserting that they required more funds to provide proper care for D.P.[15] Accordingly, the Court denies Defendants' request for Rule 11 sanctions.

### ii. Attorneys' fees

Defendants seek attorneys' fees under Rule 41(a)(2) standing alone, and in conjunction

---

[14] As discussed in the R&R, the Court acknowledges that some of the actions undertaken by Plaintiff were problematic. (*See* R&R ("[Plaintiff] should have explained why it attempted to enroll D.P. in psychiatric institutions without consulting the Family beforehand, when express provisions of the IDEA require schools to engage in the administrative process and consult parents . . . .").)

[15] Defendants also attached a dismissal of Plaintiff's Article 78 proceeding against DOE in further support of their argument that reliance on *Honig* was frivolous. (Defs. Suppl. Obj. 8–9.) The court denied Plaintiff's request in the Article 78 proceeding for lack of exhaustion of administrative remedies. (Article 78 Decision, annexed to Defs. Suppl. Obj.as Ex. 5, Docket Entry No. 38-1.) Defendants' reliance on the Article 78 decision and other arguments based on Plaintiff's failure to seek administrative remedies are meritless. The whole purpose of relying on *Honig* was so that Plaintiff could bypass administrative remedies. As discussed *supra*, Plaintiff's reliance on *Honig* was not implausible.

with the fee provisions in IDEA.[16]  (Defs. Opp'n 19–20.)  Under either theory, Defendants

primarily rely on their belief that Plaintiff's filing was frivolous, and the hardship and expenses

imposed by the litigation.  (*Id.*)  As to Rule 41(a)(2), Plaintiff contends that attorneys' fees are

"almost never awarded where an action is dismissed with prejudice . . ." and are only awarded "if

a litigant has made a practice of repeatedly bringing potentially meritorious claims and then

dismissing them with prejudice after inflicting substantial litigation costs on the opposing party."

(Pl. Reply 6 (quoting *Colombrito v. Kelly*, 764 F.2d 122, 133–34 (2d Cir. 1985).)  In addition,

Plaintiff argues that fees under IDEA are limited to prevailing parties, which has been defined as

"one who has achieved judicially sanctioned change in the legal relationship of the parties, via a

judgment on the merits or a court-ordered consent decree."  (*Id.* at 6–7.)

## 1.  Fees under Rule 41(a)(2)

"[U]nder the American Rule, absent statutory authorization or an established contrary

exception, each party bears its own attorney's fees."  *Colombrito*, 764 F.2d at 133 (citations

omitted).  "The only pertinent exception for present purposes is the court's inherent authority to

award fees when a party litigates frivolously or in bad faith."  *Id.* (citations omitted).  "The bad

faith exception permits an award upon a showing that the claim is 'entirely without color and has

been asserted wantonly, for purposes of harassment or delay, or for other improper reasons.'"  *Id.*

(citations omitted).  "Neither meritlessness alone, nor improper motives alone, will suffice."  *Id.*

(internal citations omitted).

The bad faith exception has almost never been applied "when a lawsuit is voluntarily

dismissed *with prejudice* under Fed. R. Civ. P. 41(a)(2)."  *Id.* at 133–34.  The rarity of the

---

[16]  Defendants also raise in their objections a new argument that Rule 11 and Rule 41 should be read together to allow for attorneys' fees.  (Defs. Obj. 16.)  The Court is unable to determine how the combination of these rules would lead to a different result in this action.

exception's application "upon dismissal of claims with prejudice is simply that the defendant . . . has been freed of the risk of relitigation of the issues just as if the case had been adjudicated in his favor after a trial, in which event (absent statutory authorization) the American Rule would preclude such an award." *Id.* at 134. Accordingly, courts have been hesitant to award attorneys' fees when an action has been dismissed with prejudice. *See id.*; *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).

The Court declines to exercise its discretion to award attorneys' fees pursuant to Rule 41(a)(2). As discussed *supra*, the Court has determined Plaintiff's reliance on *Honig* was not frivolous. In addition, Defendants' arguments as to "improper" motives largely only serve to state the conclusion. Accordingly, fees pursuant to Rule 41(a)(2) are improper.

### 2. Fees under Rule 41(a)(2) and IDEA combined

Under IDEA, courts may in their discretion award "reasonable attorneys' fees" "to a prevailing party who is the parent of a child with a disability."[17] 20 U.S.C. § 1415(i)(3)(B)(i)(I). A "prevailing party" is "one who has achieved a judicially sanctioned change in the legal relationship among the parties, such as a judgment on the merits or a court-ordered consent decree." *Mr. L. v. Sloan*, 449 F.3d 405, 406 (2d Cir. 2006). Courts consistently have found defendants to be prevailing parties where the action against them was voluntarily dismissed with prejudice. *See Beer v. John Hancock Life Ins. Co.*, 211 F.R.D. 67, 70 (N.D.N.Y. 2002) ("All circuit courts to have directly addressed this issue have concluded that a defendant [who has obtained a voluntary dismissal with prejudice] is a prevailing party, or alternatively, that a district

---

[17] The Court assumes for purpose of this motion that Plaintiff could be subject to the IDEA attorneys' fee provision because Plaintiff initiated the action under the statute.

court has discretion to award costs to the defendant."); *see also Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 165 (2d Cir. 2014) (disclaiming prior Second Circuit dicta which stated that "generally the defendant is not considered the prevailing party when, as here, there is a voluntary dismissal of the action by the plaintiff with prejudice." (citations omitted)). "A voluntary dismissal of an action with prejudice [is considered to materially alter the relationship of the parties], because it constitutes 'an adjudication on the merits for purposes of *res judicata*.'"[18] *Carter*, 759 F.3d at 165 (citation omitted).

The Court declines to exercise its discretion to award attorneys' fees in this action. Defendants argue their "strong response" prompted Plaintiff to agree to dismiss the action with prejudice. (Defs. Obj. 15; *see also* Pl. Reply 1. ("agree[ing] to the dismissal of this action with prejudice" with the condition that it not be subject to any attorneys' fees).) As highlighted above, courts also routinely hold parties obtaining voluntary dismissals with prejudice to be prevailing parties. Nevertheless, the Court retains discretion to award attorneys' fees even as to prevailing parties. *See A.R. ex rel. R.V. v. New York City Dep't of Educ.*, 407 F.3d 65, 67 (2d Cir. 2005) ("The IDEA grants courts the discretionary power to 'award reasonable attorneys' fees ... [to] the prevailing party' '[i]n any action or proceeding brought under' the IDEA." (citations omitted)); *Ector Cty. Indep. Sch. Dist. v. VB*, 420 F. App'x 338, 345 (5th Cir. 2011) ("A finding that a party is a prevailing party only makes him *eligible* to receive attorneys' fees under the IDEA; it does *not automatically entitle* him to recover the full amount that he spent on legal

---

[18] "Numerous federal statutes allow courts to award attorneys' fees and costs to the 'prevailing party . . . . These various fee-shifting provisions are to be interpreted consistently." *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014) (internal citations and quotation marks omitted).

representation." (citations omitted)).

Although not required to do so by statute, the Court considered, *inter alia*, the non-frivolous nature of the legal arguments,[19] the reasons for and implications of the dismissal with prejudice,[20] and Defendants' continuing claims in this litigation. The Court also notes that Plaintiff had voluntarily withdrawn its request for a preliminary injunction prior to the filing of even an answer by Defendants. (*Cf.* A&C ¶¶ 142-43 ("On September 1, 2016, [Plaintiff] submitted a motion to withdraw its preliminary injunction motion . . . Even after accomplishing its objective . . . [Plaintiff] has not withdrawn this lawsuit."); Pl. Obj. 3 ("[Defendants'] legal representation was successful in causing Plaintiff to abandon its attempt to secure a preliminary or permanent injunction removing D.P. from the school.")); *see also E.D. ex rel. Doe v. Newburyport Pub. Sch.*, 654 F.3d 140, 144 (1st Cir. 2011) ("[I]n the mootness context, a 'prevailing party' is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties *prior* to the intervening act of mootness." (citation omitted)); *Monticello Sch. Dist. No. 25 v. George L. on Behalf of Brock L.*, 102 F.3d 895, 907 (7th Cir. 1996) ("In some circumstances, even a plaintiff who formally 'prevails' . . . should receive no

---

[19] IDEA only requires the action to have been frivolous for a state educational agency or local educational agency seeking to recover against the attorney of a parent to recover attorneys' fees. 20 U.S.C. § 1415(i)(3)(B)(i)(II).

[20] As Defendants recognize, as evinced by their request for special conditions, the dismissal of this action provides limited relief even as to future actions against them. *See LaRouche v. Kezer*, 20 F.3d 68, 71 (2d Cir. 1994) ("The degree of success on the merits does not alter plaintiff's eligibility for a fee award, although it may decrease the amount of the award."); *E.M. v. Marriott Hosp. Pub. Chartered High Sch.*, 541 F. Supp. 2d 395, 398 (D.D.C. 2008) ("'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Petrovich v. Consol. High Sch. Dist. No. 230, Palos Hills, Ill.*, 959 F. Supp. 884, 891 (N.D. Ill. 1997) (same); *see also D.R. ex rel. Robinson v. Gov't of D.C.*, 637 F. Supp. 2d 11, 19 (D.D.C. 2009) (finding attorneys' fees not to be warranted where party failed to "adduce[] evidence" that their actions, as opposed to others, produced the desired result)).

attorney's fees at all." (quoting *Farrar v. Hobby*, 506 U.S. 103, 115 (1992)); *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1498 (9th Cir. 1994) ("'Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*,' the plaintiff cannot claim fees as a prevailing party [under IDEA]." (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93 (1989)). Considering all the circumstances, the Court declines to award attorneys' fees in this action, even if Defendants were to be considered prevailing parties.

### iii. Other conditions

The four other conditions proposed by Defendants all essentially serve to prevent Plaintiff from removing D.P. from CFD. (*See* Pl. Opp'n 8–9.) Plaintiff argues that these conditions are unnecessary because the DOE is providing "protective or custodial intervention to prevent D.P. from engaging in further aggressive behavior," the current IEP for the then-current school year was set to expire on June 30, 2017 and "the DOE could recommend another school for D.P. at that time." (Pl. Reply 2.) Defendants contend that a recent dismissal of Plaintiff's Article 78 action against the DOE "increases the risk that [Plaintiff] will regress to unlawful attempts to remove D.P. from its school." (Defs. Suppl. Obj. 2.) Defendants also argue that their concerns are not hypothetical because Plaintiff has contracted with DOE to provide students services until 2020.

"[R]ipeness is a jurisdictional inquiry," and courts are obliged to consider ripeness issues first. *Kowalczyk v. Barbarite*, 594 F. App'x 690, 691 (2d Cir. 2014) (citing *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 110 (2d Cir. 2009)); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). The court "must presume that [it] cannot entertain [a plaintiff's] claims 'unless the contrary appears affirmatively from the record.'" *Kowalczyk*, 594 F. App'x at 691

(quoting *Murphy*, 402 F.3d at 347).  For a claim to be ripe, "it must present a real, substantial controversy, not a mere hypothetical question.'"  *Neroni v. Zayas*, 663 F. App'x 51, 53 (2d Cir. 2016) (quoting *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013)).  In determining whether a case is ripe, the court is to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Murphy*, 402 F.3d at 347 (internal quotation marks omitted) (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

The Court declines to impose these four conditions at this time.  As to the then school 2016-2017 year, the conditions are now moot.  As to future school years, the conditions present "hypothetical future occurrences for which such conditions would be premature."  (R&R 23.) Defendants admit they participate in "their local CSE following the procedures of the IDEA and the Education Law in devising *yearly programs of education and services*."  (A&C 60 (emphasis added).)  Therefore, the existence of a general contract between Plaintiff and DOE does not make Defendants' concerns any less hypothetical.  The DOE (or even Defendants) may choose to place D.P. at another school, regardless of whether Plaintiff is one of the schools that is available to the state by contract.

**III.    Conclusion**

For the foregoing reasons, the Court adopts the R&R as to the judgment in its entirety but only in part as to its reasoning.  In particular, the Court has provided additional or different reasons for dismissal as to the first three counterclaims, and also the denial of attorneys' fees.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  March 31, 2018
        Brooklyn, New York